IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IBP, inc., | * |
| Plaintiff, | * |
| v. | *CIVIL ACTION NO. 3:99CV402 LAC/SMN |
| HADY ENTERPRISES, INC., | * |
| Defendant. | * |

## AMENDED COMPLAINT

Plaintiff IBP, inc., in the above-styled cause and pursuant to the leave granted by this Courts order dated April 21, 2000, hereby amends its Complaint in this cause as follows:

### PARTIES

1. Plaintiff IBP, inc. ("IBP") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of South Dakota.

2. Defendant Hady Enterprises, Inc. ("Hady"), is a corporation organized and existing under laws of the State of Illinois. At all times material hereto, Defendant Hady was engaged in substantial and not isolated activity within the State of Florida through the operation of a business located in Pensacola, Florida.



2000 MAY -4 PM 4: 24

FILED

## JURISDICTION

3.  This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 by reason of the diversity of citizenship of the Plaintiff and the Defendant and the amount in controversy, which exceeds $75,000.00, exclusive of interest and costs.

## FACTS

4.  During 1998, certain quantities of beef livers were produced by IBP under a standard of production, packaging and labeling for export to Russia.

5.  In June of 1998, IBP received purchase orders from Defendant Hady for quantities of beef livers to be produced, processed, packaged and labeled by IBP for export to Russia. [see e.g., Exhibit A] In response to such purchase orders, IBP sold and delivered said specially produced, processed, packaged and labeled beef livers to Hady in June and July of 1998. Said beef livers were delivered to Hady in Pensacola, Florida.

6.  In ordering such beef livers from IBP, Hady knew that IBP would produce, process, package and label said beef liver specifically for export to Russia in accordance with the laws and regulations of such country. Hady also knew that such specialized production, processing, packaging and labeling for export to Russia, would preclude the processing, labeling and sale of such beef livers to certain other countries, including Egypt. Hady knew that the country of Egypt had distinct rules and regulations governing the import of meat and other agricultural products, including handling and processing the livers in accordance with Islamic

laws, and that the labeling of the product was required to disclose (in a form prescribed by Egyptian import laws) that the product conformed to Egyptian law and regulations.

7. Hady intentionally diverted a quantity of these beef livers to Egypt, where they were subsequently rejected for non-conformity with Egyptian law, and held in Port Said, Egypt by the Egyptian authorities.

8. Hady knew that the product was not intended for the Egyptian market and that IBP's handling and labeling, which had been for export to Russia in accordance with the contract of purchase by Hady, did not conform to Egyptian law and import regulations. In an effort to market the livers in Egypt despite the Egyptian law and despite having represented to IBP that the product was to be processed and labeled for the Russian market, Hady tampered with the IBP product designated for the Russian market by altering the labels on the master cartons or containers, altering the labels on the interior poly bags and altering the labels inserted in the individual bags containing the beef liver. The livers were not processed to conform with Egyptian law. Such tampering caused the IBP beef liver products which were delivered to the country of Egypt to violate the provisions of the food importation laws and regulations of the country of Egypt.

9. As a result of the above said tampering, the country of Egypt rejected the shipment and banned all of IBP's products from further importation to said country.

## COUNT I
## (BREACH OF CONTRACT)

10.     Plaintiff adopts the allegations in Paragraphs 1-9 as if fully set forth herein.

11.     In July 1998 through September 1998, Hady, through each of its purchase orders, entered into contracts with IBP for the purchase of beef livers packaged for resale to Russian buyers. [Exhibit A]. Specifically, Hady ordered from IBP "select beef liver 2 PC/box for Russia." [Exhibit A.]

12.     Furthermore, due to the course of performance, course of dealing and/or usage of trade between Hady and IBP, Hady was obligated not to resell the beef livers packaged for Russia to any buyer who would not have accepted the product as labeled and packaged by IBP.

13.     Hady, at all times, impliedly covenanted to perform the express terms of these contracts in good faith.

14.     Pursuant to these contracts, IBP delivered to Hady frozen IBP selected beef livers packaged to comply only with Russian laws and regulations.

15.     Hady breached both the express terms of these contracts and the implied covenant of good faith and fair dealing when it attempted to sell said IBP beef livers, not to Russian buyers as set forth in these contracts, but to buyers who would not accept the product as labeled and packaged by IBP.

16.     As a result of said breach, IBP has suffered and continues to suffer

4

damages by being banned from further sales of IBP's products in the Egyptian market.

WHEREFORE, Plaintiff IBP, inc. demands judgment for compensatory damages in the amount of $10,000,000.00, together with interest and costs.

## COUNT II
## (NEGLIGENCE & GROSS NEGLIGENCE)

17. Plaintiff adopts the allegations in Paragraphs 1-9 as if fully set forth herein.

18. In July 1998 through September 1998, in Pensacola, Florida, Hady negligently, maliciously, and/or willfully or wantonly altered and/or modified IBP labels on cartons and packages containing beef livers designated for sale to importers and customers in the country of Russia.

19. Hady, among other things, had a duty not to alter, modify and/or tamper with the IBP labels or product in such a way as to expose IBP to risk and/or damage.

20. Furthermore, at the time Hady altered and/or modified the IBP labels on cartons and packages containing the beef livers, Hady undertook a duty to lessen the risk of injury to IBP or see that sufficient precautions were taken to protect IBP from the risk of harm posed by Hady's misconduct.

21. In or around September 1998, Hady breached said duties by negligently, maliciously and/or willfully or wantonly importing and attempting to sell

said beef livers to Egyptian buyers.

22. The Egyptian authorities seized and detained the beef livers which did not conform to Egyptian law and import regulations.

23. As a proximate consequence of Hady's negligence, malice, gross negligence and/or willful or wanton conduct, Plaintiff IBP has been denied entry into the Egyptian market; has lost business and business opportunities in the Egyptian market; has lost good will in its name; and has been otherwise damaged.

WHEREFORE, Plaintiff IBP, inc. demands judgment for compensatory and punitive damages in the amount of $20,000,000.00, together with interest and costs.

## COUNT III
## (DEFAMATION & DISPARAGEMENT)

24. Plaintiff adopts the allegations in Paragraphs 1-9 as if fully set forth herein.

25. In July 1998 through September 1998, in Pensacola, Florida, Hady wrongfully and fraudulently altered and/or modified IBP labels on cartons and packaging containing beef livers originally designated for sale in Russia.

26. In or around September of 1998, Hady caused to be published false, libelous and defamatory statements about and concerning IBP and its products through its attempted sale of said beef livers packaged for sale in Russia to Egyptian buyers in Egypt.

6

27. IBP was damaged by said false, disparaging and defamatory statements as alleged in Paragraph 23 above.

WHEREFORE, Plaintiff IBP, inc. demands judgment for compensatory and punitive damages in the amount of $20,000,000.00, together with interest and costs.

## COUNT IV

## (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS)

28. Plaintiff adopts the allegations in Paragraphs 1-9 as if fully set forth herein.

29. IBP was in the business of selling beef livers and other beef products to Egyptian buyers and to importers for delivery to Egypt.

30. Hady had knowledge of IBP's relations with such Egyptian buyers and importers.

31. In July 1998 through September 1998, Hady wrongfully and fraudulently altered and/or modified IBP labels on cartons and packaging containing beef livers originally designated for Russia.

32. As a direct and proximate result of Hady's above actions, said beef livers were seized and detained by the Egyptian authorities, and IBP was banned by said authorities from future sale to Egyptian customers or importers.

33. In an attempt to sell the beef livers packaged in the cartons and packages it had wrongfully and fraudulently altered and/or modified, Hady caused to be published said altered and/or modified labels containing false, libelous and

defamatory statements of and concerning IBP and its products.

34. Hady through its actions and words, intentionally and unjustly interfered with and injured IBP's relations with said Egyptian customers of IBP.

35. As a result of this tortious interference of Hady, IBP has been damaged as alleged in Paragraph 23 above.

WHEREFORE, Plaintiff IBP, inc. demands judgment for compensatory and punitive damages in the amount of $20,000,000.00, together with interest and costs.

## COUNT V

### (USE OF FALSE DESIGNATIONS OF ORIGIN, FALSE DESCRIPTIONS AND FALSE REPRESENTATIONS)

36. Plaintiff adopts the allegations in Paragraphs 1-9 as if fully set forth herein.

37. As part of the sale of its beef products, Plaintiff IBP uses distinctive production, processing, packaging and labeling of its product. Such production, processing, packaging and labeling is undertaken specifically to meet the requirements of particular countries and markets, and to distinguish IBP's products from others. By the use of such distinctive production, processing, packaging and labeling, products bearing the distinctive IBP packaging and labeling are regarded by the public as being sponsored by, approved by, authorized by, associated with, or affiliated with IBP. The IBP identification, brand, label, trade dress and reputation are valuable commercial assets of IBP and form part of its goodwill.

38. Defendant Hady, in intentionally tampering with the IBP product designated for the Russian market, by altering the labels on the master cartons, altering the labels on the polybags and altering the labels inserted in the bags containing the beef livers, has improperly and illegally offered for sale and sold IBP's product in such a manner as to suggest sponsorship by, approval by, authorization by, association with, or affiliation with IBP, and as an indication of source of origin, with full knowledge of IBP's rights concerning such production, processing, packaging and labeling.

39. Hady has willfully promoted the distribution of altered products under IBP's labeling and related identification of its product, so as to cause confusion or mistake among the public and customers as to the true origin, source, sponsorship, approval, authorization, association or affiliation of Hady's business, all with the intent to profit Hady, and to IBP's injury and damage.

40. The aforesaid use by Hady of altered packaging and labeling of IBP products constitutes use of false designations of origin, false descriptions and false representations in interstate commerce in violation of § 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), as a result of which IBP has been and continues to be damaged.

WHEREFORE, Plaintiff IBP, inc. demands judgment for compensatory and punitive damages in the amount of $20,000,000.00, together with interest and costs.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

                                                                                            */s/ Robert A. Emmanuel*

Robert A. Emmanuel,
Florida Bar No. 283797
Charles P. Young
Florida Bar No. 108741
EMMANUEL, SHEPPARD & CONDON
30 South Spring Street
Post Office Drawer 1271
Pensacola, Florida  32596
(850) 433-3824
Attorneys for Plaintiff


OF COUNSEL:

Richard H. Gill (GIL007)
Gorge W. Walker, III (WAL097)
Mitchel H. Boles (BOL029)
COPELAND, FRANCO, SCREWS & GILL, P.A.
444 S. Perry Street
Post Office Box 347
Montgomery, Alabama  36101-0347
(334) 834-1180

F:\USERS\CMR\I34198\Pleadings\amended complaint3

**HADY ENTERPRISE, INC.**

Exhibit A

# PURCHASE ORDER

E 8214

TO:
BP, INC.
BP AVENUE
PANAMA CITY
32402-2061

P.O. NUMBER
P.O. DATE
REQUISITIONED BY

SHIP TO:
HADY ENTERPRISE, INC
700 S BARRACKS STREET
PENSACOLA FLORIDA 32501

| QTY | UNIT | DESCRIPTION | PRICE |
|---|---|---|---|
| TRUCKLOAD | | | |
| 18 | 42000 LBS | SELECT BEEF LIVER 2 PC/BOX FOR RUSSIA | 0 |

SUBTOTAL
FREIGHT
TAX RATE
TAX
TOTAL DUE

700 S. BARRACKS ST. • P. O. BOX 12644 • PENSACOLA 32574
FAX (904) 432-0107 • PHONE (904)

TOTAL P.15



# PURCHASE ORDER

E 821Y

TO:

P.O. NUMBER
P.O. DATE
REQUISITIONED BY SERAG

| | | DESCRIPTION | |
|---|---|---|---|
| | | SELECT BEEF LIVER 2 PC/BOX FOR RUSSIA | |

SUBTOTAL
FREIGHT
TAX RATE
TAX

700 S. BARRACKS ST. • P. O. BOX 12644 • FL 32574
FAX (904) 432-0107 • PHONE (904)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished to Danny L. Kepner and John B. Trawick, of Shell, Fleming, Davis & Menge, Ninth Floor, Seville Tower, 226 Palafox Place Pensacola, Florida 32598 Attorneys representing, Hady Enterprises, Inc., by United States Mail, on this 4th day of May, 2000.

_____
Charles P. Young, of
EMMANUEL, SHEPPARD & CONDON
Florida Bar No. 108741
30 South Spring Street
Post Office Drawer 1271
Pensacola, Florida   32596
(850) 433-3824
Attorneys for Plaintiff


OF COUNSEL:

Gorge W. Walker, III (WAL097)
Mitchel H. Boles (BOL029)
COPELAND, FRANCO, SCREWS & GILL, P.A.
444 S. Perry Street
Post Office Box 347
Montgomery, Alabama   36101-0347
(334) 834-1180